# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAZARUS DANIEL MARQUEZ,<br><br>  Petitioner,<br><br>  v.<br><br>JEFF LYNCH,<br><br>  Respondent. | Case No. 1:22-cv-00896-ADA-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS AND DISMISS PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 10) |

Petitioner Lazarus Daniel Marquez is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. As the instant petition was filed outside 28 U.S.C. § 2244(d)(1)'s one-year limitation period, the undersigned recommends granting Respondent's motion to dismiss and dismissing the petition as untimely.

## I.

## BACKGROUND

On June 2, 2017, Petitioner was convicted by a jury in the Tulare County Superior Court of second-degree robbery, two counts of dissuading a witness, identity theft, assault with a firearm, carjacking, kidnapping, and various firearm enhancements. Petitioner was sentenced to an indeterminate imprisonment term of life plus ten years along with a consecutive aggregate determinate imprisonment term of twenty years and four months. (LDs[1] 1, 2.) On July 15, 2019, the California Court of Appeal, Fifth Appellate District affirmed the judgment but remanded the

---

[1] "LD" refers to the documents electronically lodged by Respondent. (ECF No. 11.)

1  matter to the trial court to exercise its resentencing discretion on the firearm enhancements. (LD
2  2). On August 15, 2019, Petitioner filed a petition for review in the California Supreme Court,
3  which denied the petition on September 18, 2019. (LDs 3, 4.) On January 27, 2020, the trial
4  court declined to strike the firearm enhancements. (LD 5.) Petitioner did not appeal the
5  resentence, and Petitioner did not file any state habeas petitions. (ECF No. 10 at 2.)[2]

6      On May 15, 2022,[3] Petitioner constructively filed the instant federal petition for writ of
7  habeas corpus, raising claims of actual innocence and sufficiency of the evidence. (ECF No. 1.)
8  Respondent filed a motion to dismiss, arguing that the petition was filed outside the one-year
9  limitation period and is a mixed petition. (ECF No. 10.) Petitioner filed an opposition, and
10 Respondent filed a reply. (ECF Nos. 14, 19.) The parties also submitted supplemental briefs.
11 (ECF Nos. 23, 24.)

**II.**

**DISCUSSION**

**A.  Statute of Limitations**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions. AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).

    1.  Commencement of the Limitation Period

Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the

---

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.
[3] Pursuant to the mailbox rule, a *pro se* prisoner's habeas petition is filed "at the time . . . [it is] delivered . . . to the prison authorities for forwarding to the court clerk." Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th Cir. 2014) (alteration in original) (internal quotation marks omitted) (quoting Houston v. Lack, 487 U.S. 266, 276 (1988). Respondent applies the mailbox rule in the motion to dismiss. (ECF No. 10 at 2.)

    judgment of a State court. The limitation period shall run from the latest of –

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

  In most cases, the limitation period begins running on the date that the petitioner's direct review became final. On January 27, 2020, the trial court declined to strike the firearm enhancements after remand, and Petitioner did not file any appeal. Therefore, the judgment became final when Petitioner's time for seeking review expired sixty days later on March 27, 2020. See Cal. R. Ct. 8.308. The one-year limitation period commenced running the following day, March 28, 2020, and absent tolling, was set to expire on March 29, 2021.[4] See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)).

  2. Statutory Tolling

  The "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). Here, however, Petitioner did not file any state habeas petitions. Accordingly, statutory tolling is not applicable.

///

---

[4] The last day of the one-year period was March 27, 2021, which fell on a Saturday. Accordingly, the time for seeking review was extended to the next business day. See Fed. R. Civ. P. 6(a)(1)(C) ("if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

3

3. Equitable Tolling

The limitation period is subject to equitable tolling if the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Petitioner bears the burden of alleging facts that would give rise to tolling. Holland, 560 U.S. at 649; Pace, 544 U.S. at 418.

In Petitioner's declaration in support of his petition, Petitioner asserts that he has been diligently pursuing his criminal convictions and extraordinary circumstances stood in his way. (ECF No. 1 at 37.) Specifically, Petitioner alleges that his mental health, lack of access to his legal documents and the law library, limited education, and the COVID-19 pandemic constitute extraordinary circumstances that prevented him from timely filing his petition. (ECF No. 1 at 37–41.)

### a. Mental Impairment

In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit articulated the following standard for equitable tolling based on mental impairment:

> (1) *First,* a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

Bills, 628 F.3d at 1099–1100 (footnote omitted) (citing Holland, 560 U.S. at 649).

The Supreme Court has recognized that "[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." Indiana v. Edwards, 554 U.S. 164, 175 (2008). Accordingly, the Court will undertake a review of the relevant time period and determine whether at any point Petitioner's mental impairment was so severe that he "was unable rationally or factually to personally understand the need to timely file" or that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." Bills, 628 F.3d at 1100.

Based on the records before the Court, Petitioner was diagnosed with major depressive disorder, unspecified anxiety disorder, and posttraumatic stress disorder during the relevant time period.[5] (Reply Ex. A, at 908, 1403, 1406, 1408, 1410, 1413, 1415, 1417, 1419, 1421, 1424, 1426, 1428, 1430, 1432, 1434, 1437, 1440, 1442, 1444, 1446, 1448–49, 1451, 1453, 1455, 1457, 1458, 1460, 1462–63, 146–66, 1468, 1471, 1475, 1490, ECF Nos. 19-1, 19-2.)[6] From April 2019 through at least April 1, 2021, Petitioner was in the Enhanced Outpatient Program ("EOP") level of care, (Reply Ex. A, at 1403), which "is for inmates who suffer 'Acute Onset or Significant Decompensation of a serious mental disorder characterized by increased delusional thinking, hallucinatory experiences, marked changes in affect, and vegetative signs with definitive impairment of reality testing and/or judgment,' and who are unable to function in the general prison population but do not require twenty-four hour nursing care or inpatient hospitalization." Coleman v. Schwarzenegger, 922 F. Supp. 2d 882, 903 n.24 (E.D. Cal. 2009).

From March 2020 to March 2021, progress notes indicate that Petitioner's attention and concentration appeared to be intact and no impairment or cognitive deficit was evident. Petitioner's thought process was described as "coherent," Petitioner's insight and judgment were determined to be "good," and Petitioner denied suicidal or homicidal ideation or any acute distress. (Reply Ex. A, at 1406, 1410, 1411, 1413, 1415, 1417, 1419–20, 1422, 1426, 1428.) For purposes of comparison, from September 2021 through May 2022, the months that Petitioner assisted a consulting company in preparing the instant federal habeas petition,[7] Petitioner was still at the EOP level of care. (Reply Ex. A, at 1013, 1015, 1017, 1019, 1021, 1085, 1088, 1204, 1209, 1215, 1220, 1225, 1230, 1235, 1240, 1244–45, 1249, 1252–61, 1264, 1274, 1282, 1296, 1301, 1305, 1312, 1319, 1326, 1332, 1338.) Progress notes indicate that Petitioner's attention

---

[5] From before the limitation period began running until January 28, 2021, progress notes indicate that Petitioner had ongoing issues with major depressive disorder. From February 3, 2021, until at least April 1, 2021, progress notes no longer list major depressive disorder as an ongoing issue for Petitioner.

[6] Respondent's Exhibit A page numbers refer to the page numbers stamped at the bottom right corner.

[7] Petitioner declares that in September 2021, Petitioner contacted a consulting company for help with his federal habeas petition. (ECF No. 1 at 40–41.) In November 2021, Petitioner completed a letter setting forth his version of events. A case review file was completed on January 12, 2022, and Petitioner "discuss[ed] the different options with the [consulting company] by phone and with [his] family." (Id. at 41.) After the fee to the consulting company was paid in March 2022 through May 2022, Petitioner attempted to gather "any and all documents [he] could get from the prison about the Covid-19 prison pandemic." (Id.)

1  and concentration were within normal limits and that he was "alert and oriented." Petitioner's
2  thought process was described as "clear," "coherent," "linear," and "goal directed." His insight
3  and judgment were determined to be "fair" and "adequate." (Reply Ex. A, at 983–84, 989–90,
4  995, 1013, 1015, 1017, 1019, 1021, 1023, 1025, 1080–81, 1085, 1204, 1210, 1215, 1220, 1226,
5  1231, 1235, 1240, 1244-45, 1249, 1252–61, 1264–74, 1277–82, 1285–97, 1299–1301, 1304,
6  1308–12, 1315–20, 1323–26, 1329–32, 1335–38.)

7  Additionally, the record reflects that during the relevant time period Petitioner maintained
8  a job and was taking college courses. For example, on April 1, 2020, progress notes indicate that
9  Petitioner stated he was recently given a job as a housing clerk. (Reply Ex. A, at 1485.) On June
10 17, 2020, progress notes indicate that Petitioner shared he began a new job with the Peer Literacy
11 Mentorship Program. (Id. at 1474.) On October 9, 2020, Petitioner reported that he was still
12 working as a literacy tutor. (Id. at 1453.) On January 5, 2021, progress notes indicate that
13 Petitioner shared his excitement that he was approached to possibly become a porter during third
14 watch. (Id. at 1430.) With respect to education, on May 12, 2020, Petitioner noted that he had
15 been offered the possibility of attending a college program. (Id. at 1481.) On January 14, 2021,
16 Petitioner shared that he could begin his college courses the following week. (Id. at 1428.) On
17 March 10, 2021, Petitioner indicated that he had a midterm. (Id. at 1410–11.) And on April 22,
18 2021, Petitioner noted that he completed his first semester of college. (Id. at 1396.)

19 The Ninth Circuit previously found that a district court did not err in determining that a
20 petitioner did not establish an exceptional circumstance that would warrant equitable tolling
21 where the petitioner "was described as 'fully alert and oriented' with 'fairly good' insight and
22 judgment regarding his illness," "responsive, clear, coherent, and high functioning," and that "his
23 thought . . . process was primarily clear, rational, and organized." Orthel v. Yates, 795 F.3d 935,
24 939 (9th Cir. 2015) (some quotation marks omitted). The Ninth Circuit also noted that "Orthel
25 participated productively in correspondence courses, college-level classes, and prison
26 programming that required substantial mental competence." Id. Similarly here, progress notes
27 during the limitation period indicate that Petitioner's attention and concentration appeared to be
28 intact and no impairment or cognitive deficit was evident, Petitioner's thought process was

1   described as "coherent," Petitioner's insight and judgment were determined to be "good,"
2   Petitioner worked as a literacy tutor and completed his first semester of college.
3       Based on the foregoing, the Court finds that Petitioner's mental condition was not so
4   severe that he "was unable rationally or factually to personally understand the need to timely
5   file" or that his "mental state rendered him unable personally to prepare a habeas petition and
6   effectuate its filing." Bills, 628 F.3d at 1100. See Yeh v. Martel, 751 F.3d 1075, 1078 (9th Cir.
7   2014) (observing that "the type of petitioner entitled to equitable tolling" was illustrated in
8   Forbess v. Franke, 749 F.3d 837, 840 (9th Cir. 2014), where the petitioner "believed he was
9   working undercover for the FBI, and his trial was a 'sham' orchestrated to lure his ex-wife out of
10  hiding and arrest her for being part of an extensive drug distribution operation"). Therefore,
11  Petitioner has not established the existence of an extraordinary circumstance from March 2020
12  through at least March 2021 based on mental impairment.

### b. COVID-19 Pandemic and Limited Access to Law Library

14      In his declaration, Petitioner states that from March 2020 to April 2022, Petitioner did not
15  have access to the law library because he was not a priority legal user with an established court
16  deadline. Rather, due to the COVID-19 pandemic, there was only a paging system, which was
17  not helpful to Petitioner because he did not know what documents to request or how to prepare a
18  federal habeas corpus petition. (ECF No. 1 at 39.)
19      "Ordinary prison limitations on [a petitioner]'s access to the law library" are generally
20  not sufficient to warrant equitable tolling. Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009).
21  See Wolf v. Lizarraga, 786 F. App'x 680, 681 (9th Cir. 2019) ("[L]imitations on access to legal
22  resources in prison are not considered extraordinary circumstances but are inherent in prison
23  life."). Further, "[c]ourts have found that general claims of lack of access to the prison law
24  library due to restrictions resulting from COVID-19 are not 'extraordinary circumstances'
25  justifying equitable tolling. Instead, a petitioner must allege specific facts showing how such
26  COVID-19-related lockdowns 'actually prevented' the petitioner from timely filing a petition."
27  Davis v. Kibler, No. 2:21-cv-07620-FMO-JDE, 2022 WL 2121907, at *6 (C.D. Cal. Feb. 24,
28  2022).

Here, Petitioner contends that due to the COVID-19 pandemic, there was only a paging system, which was not helpful to Petitioner because he did not know what documents to request or how to prepare a federal habeas corpus petition. (ECF No. 1 at 39.) However, the Ninth Circuit has "rejected the argument that lack of access to library materials automatically qualifie[s] as grounds for equitable tolling." Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc)). Additionally, "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006). Accord Baker v. Cal. Dep't of Corr., 484 F. App'x 130, 131 (9th Cir. 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance . . . are not extraordinary circumstances to warrant equitable tolling . . . ."); Ford v. Pliler, 590 F.3d 782, 789 (9th Cir. 2009) (noting that THE extraordinary circumstance "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone"). Accordingly, the Court finds that Petitioner is not entitled to equitable tolling on this ground.

### c. Lack of Access to Legal Documents

In his declaration, Petitioner states that from September 2019 to May 2020, Petitioner did not have access to his legal documents.[8] (ECF No. 1 at 37–39.) On February 7, 2020, Petitioner was transferred to CSP Sacramento without his property and did not receive his property until late May 2020. (ECF No. 1 at 38, 39.) The limitation period began to run on March 28, 2020, and thus, Petitioner was without his legal documents for approximately two months during the limitation period.

"Deprivation of legal materials is the type of external impediment for which we have granted equitable tolling. But [Petitioner] bears the burden of showing . . . that the hardship caused by lack of access to his materials . . . *caused* him to file his petition . . . a year late." Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013 (9th Cir. 2009) (emphasis added) (citing Lott v. Mueller, 304 F.3d 918, 924–25 (9th Cir. 2002), and Pace, 544 U.S. at 418). "[W]hether

---

[8] As the limitation period did not begin to run until March 28, 2020, the Court will not address the time period (November 2019 to January 2020) during which Petitioner's transcripts were with another inmate who had been transferred to administrative segregation. (ECF No. 1 at 37–38.)

an impediment caused by extraordinary circumstances prevented timely filing is a 'causation question' that requires courts to evaluate a petitioner's diligence in all time periods—before, during, and after the existence of an 'extraordinary circumstance'—to determine whether the extraordinary circumstance actually did prevent timely filing." Smith v. Davis, 953 F.3d 582, 595 (9th Cir. 2020) (en banc). "[I]t is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." Id. at 599. "What reasonable diligence would look like . . . varies based on the specifics of the case, but in every instance reasonable diligence seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court." Smith, 953 F.3d at 601.

Petitioner appears to have attempted to diligently remedy the deprivation of his legal materials,[9] but Petitioner does not establish that he was diligent in actively pursuing his rights once he received his property. Petitioner declares that he "would ask around for help with [his] federal habeas petition" and wrote to the law library for help during the time period from March 2020 to April 2022. This falls short of "work[ing] on his petition with some regularity." Smith, 953 F.3d at 601. Further, Petitioner presents no evidence or explanation as to why two months' deprivation of his legal documents (and where Petitioner had ten months thereafter to timely file his petition) "actually did prevent timely filing," Smith, 953 F.3d at 595, and caused Petitioner to file his petition more than one year after the limitation period was set to expire. Accordingly, the Court finds that Petitioner is not entitled to equitable tolling on this ground.

Based on the foregoing, the Court finds that the instant federal petition was not timely filed, and dismissal is warranted on this ground.

**B. Exhaustion**

A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based

---

[9] Petitioner declares that he "kept asking the property officer at CSP Sacramento about [his] property" and "filed a CDCR-602 appeal to get [his] property." (ECF No. 1 at 38.)

9

1    on comity to the state court and gives the state court the initial opportunity to correct the state's
2    alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v.
3    Lundy, 455 U.S. 509, 518 (1982). A petitioner can satisfy the exhaustion requirement by
4    providing the highest state court with a full and fair opportunity to consider each claim before
5    presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v.
6    Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971).

7    Respondent contends that dismissal also is warranted because Petitioner has not
8    presented his freestanding actual innocence claim to the California Supreme Court, and thus, the
9    claim is unexhausted. (ECF No. 10 at 3–4.) Petitioner apparently does not challenge
10   Respondent's contention and states that he "elects to delete the unexhausted claim and proceed
11   with his exhausted claim." (ECF No. 14 at 2.) The Supreme Court has instructed that "if a
12   petitioner presents a district court with a mixed petition and the court determines that stay and
13   abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims
14   and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably
15   impair the petitioner's right to obtain federal relief." Rhines v. Weber, 544 U.S. 269, 278 (2005).
16   However, as the instant federal habeas petition is untimely, Petitioner cannot proceed with the
17   exhausted claim.

18   **C.  Actual Innocence Gateway**

19   In the petition, Petitioner asserts that "a freestanding actual innocence claim may not be
20   procedurally defaulted and constitutes an exception to the procedural default provisions." (ECF
21   No. 1 at 13 (capitalization and quotation marks omitted).) To the extent that the petition can be
22   construed as arguing that the petition should not be dismissed as untimely or unexhausted
23   because Petitioner is actually innocent, the Court finds that Petitioner has not satisfied the
24   requirements of an actual innocence gateway claim.

25   "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass
26   whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."
27   McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). The Supreme Court "caution[ed], however,
28   that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold

requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (second alteration in original) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). A "gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" House v. Bell, 547 U.S. 518, 537 (2006) (quoting Schlup, 513 U.S. at 324). "'New' evidence under Schlup does not actually have to be newly discovered. Rather, we assess any evidence that is 'newly presented,' as in 'not presented at trial.'" Gable v. Williams, 49 F.4th 1315, 1322 (9th Cir. 2022) (citations omitted), cert. denied sub nom. Steward v. Gable, 143 S. Ct. 1796 (2023). The "Schlup standard is demanding and permits review only in the 'extraordinary' case." House, 547 U.S. at 538 (some internal quotation marks omitted) (quoting Schlup, 513 U.S. at 327).

Here, Petitioner's actual innocence claim is based on "the arguments . . . that were submitted on appeal" regarding the sufficiency of the evidence that was presented at trial. (ECF No. 1 at 13.) Petitioner does not present new reliable evidence. Accordingly, Petitioner has not satisfied the requirements of an actual innocence gateway claim.

## III.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Respondent's motion to dismiss (ECF No. 10) be GRANTED; and
2. The petition for writ of habeas corpus be DISMISSED as untimely.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling

pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 11, 2023**              /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE